UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIN SMITH,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>FCA US, LLC, *et al*.,<br><br>　　　　　　Defendants. | Case No. 2:21-cv-05347-FLA (GJSx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [DKT. 12]** |

## RULING

Before the court is Plaintiff Erin Smith's ("Plaintiff" or "Smith") Motion to Remand ("Motion"). Dkt. 12-1 ("Mot."). Defendant FCA US, LLC ("Defendant" or "FCA") opposes the Motion. Dkt. 14 ("Opp.").

On September 21, 2021, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for September 24, 2021. Dkt. 16; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15. For the reasons stated herein, the court DENIES Plaintiff's Motion.

/ / /

/ / /

**BACKGROUND**

Plaintiff filed this action in Los Angeles Superior Court ("LASC") on September 24, 2020. Dkt. 5, Ex. A ("Compl.") at 31. Plaintiff alleges she purchased a Jeep Cherokee vehicle on or about June 24, 2017 that was manufactured and/or distributed by Defendant. Compl. ¶ 9. The Complaint asserts causes of action for breach of express and implied warranties under California's Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code §§ 1790-1795, and fraudulent inducement-concealment. *See generally* Compl. Plaintiff states she has "suffered damages in a sum to be proven at trial in an amount that is not less than $25,001.00," Compl. ¶ 12. She seeks, *inter alia*, actual damages, restitution, a civil penalty in the amount of two times Plaintiff's actual damages, reasonable attorneys' fees, and punitive damages. *See* Compl., Prayer for Relief.

On July 1, 2021, Defendant filed a notice of removal, invoking this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See generally* Dkt. 1 ("NOR"). Plaintiff now moves to remand to LASC. *See* Mot.

**DISCUSSION**

I.  **Plaintiff's Request for Judicial Notice**

Plaintiff requests the court take judicial notice of certain district court orders remanding actions to state court. Dkt. 13. Plaintiff, however, fails to identify any specific "fact … not subject to reasonable dispute" that the court may judicially notice. Fed. R. Evid. 201; *see also Pittman v. Wells Fargo Bank, N.A.*, No. 16-cv-00348-GW (JEMx), 2016 WL 7507772, at *4 (C.D. Cal. Apr. 28, 2016), *aff'd in part*, 694 F. App'x 520 (9th Cir. 2017) ("Plaintiff appears to request judicial notice of these opinions as legal authorities, and as such, there is no reason why judicial notice is required."). As the orders are not the proper subject of judicial notice, the court DENIES Plaintiff's request. The court will consider the decisions in its legal analysis to the extent they are applicable.

/ / /

## II.     Legal Standard

A defendant may remove an action from state court to federal court if the plaintiff could have originally filed the action in federal court. *See* 28 U.S.C. § 1441(a).  Under 28 U.S.C. § 1332, a district court has original jurisdiction over a civil action where (1) the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and (2) the dispute is between "citizens of different States."

When a complaint filed in state court alleges on its face "damages in excess of the required jurisdictional minimum," the amount pled controls unless it appears "to a legal certainty" that the claim is for less than the jurisdictional amount. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402-04 (9th Cir. 1996).  "The complaint, however, does not always state a specific sum." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010).  In the circumstances where it is "unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Fritsch v. Swift Transportation Co. of Arizona*, LLC, 899 F.3d 785, 793 (9th Cir. 2018) (citation omitted).  "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [the] defendant's liability." *Lewis*, 627 F.3d at 400.  Accordingly, in assessing the amount in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (cleaned up).

Removability is determined based on the removal notice and the complaint as it existed at the time of removal. *See Miller v. Grgurich*, 763 F.2d 372, 373 (9th Cir. 1985).  The removing party need only include a "short and plain statement" setting forth "a plausible allegation that the amount in controversy exceeds the jurisdictional

threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 83, 89 (2014). Where the plaintiff contests the removing defendant's allegations, however, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 82. "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Courts strictly construe the removal statutes, rejecting removal jurisdiction in favor of remand to the state court if any doubts as to the right of removal exist. *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 667 (9th Cir. 2012).

### III. Analysis[1]

Here, the parties dispute whether Defendant has demonstrated the amount in controversy in this action exceeds $75,000. *See* Mot. 6-16; Opp. 8-20.

#### A. Legal Certainty Test

Defendant argues "it is evident from the face of the complaint" that the amount in controversy exceeds $75,000 because Plaintiff alleges she suffered damages in an amount "not less than $25,001.00"—which Defendant interprets as a measure of Plaintiff's actual damages—and Plaintiff seeks twice her actual damages as a civil penalty and attorneys' fees. Opp. 10. Plaintiff, on the other hand, maintains that the $25,001.00 "damages" figure "refers to Plaintiff's **total damages**, which include, *inter alia*, (1) actual damages; (2) civil penalties; (3) attorneys' fees; *and* (4) punitive damages." Mot. 6 (emphasis in original). According to Plaintiff, "it is unclear from the face of the Complaint that the [jurisdictional] threshold is exceeded," and thus

---

[1] Plaintiff does not dispute that she and Defendant are citizens of different states. *See generally* Mot. This is sufficient to establish diversity of citizenship pursuant to 28 U.S.C. § 1332. *See Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1228 (9th Cir. 2019) (noting "when a defendant's allegations of citizenship are unchallenged, nothing more is required").

1  "Defendant must show by a preponderance of the evidence that the amount in
2  controversy exceeds $75,000." Mot. 5.
3       The court agrees with Plaintiff that the face of the Complaint does not
4  unambiguously plead damages in excess of the jurisdictional minimum. Plaintiff's
5  allegation that she suffered damages in an amount "not less than $25,001.00" does not
6  delineate the boundaries of the damages sought, and thus does not clearly indicate
7  more than $75,000 is in controversy. Further, the Ninth Circuit has noted that when a
8  damages estimate is articulated in the body of the complaint, but "no mention is made
9  of a total dollar amount in controversy" in the Prayer for Relief, "the complaint fails to
10 allege a sufficiently specific total amount in controversy" for the "legal certainty" test
11 to apply. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700-01 (9th Cir. 2007).
12 Courts, therefore, routinely find that identical language alleging damages "in an
13 amount that is not less than $25,001.00" is not sufficiently specific to meet the amount
14 in controversy requirement. *See, e.g., Carillo v. FCA USA, LLC*, 546 F. Supp. 3d 995,
15 1000 (C.D. Cal. 2021); *Luna v. FCA US LLC*, No. 21-cv-01230-LHK, 2021 WL
16 4893567, at *5 (N.D. Cal. Oct. 20, 2021). Accordingly, Defendant must submit
17 evidence that establishes it is "more likely than not" that the amount in controversy
18 exceeds $75,000. *See Sanchez*, 102 F.3d at 404.
19       **B.   Preponderance of the Evidence Test**
20       "Damages recoverable under the Song-Beverly Act include restitution,
21 incidental and consequential damages, attorneys' fees and costs, and, if there has been
22 a 'willful' violation of the Act, a civil penalty." *Ortega v. Toyota Motor Sales, USA,*
23 *Inc.*, 572 F. Supp. 2d 1218, 1221 (S.D. Cal. 2008); *see also* Cal. Civ. Code § 1794.
24 The remedies provided by the Song-Beverly Act are "cumulative and shall not be
25 construed as restricting any remedy that is otherwise available … ." Cal. Civ. Code
26 § 1790.4. A consumer may state a tort claim and recover punitive damages even
27 when the facts underlying the tort claim and the Song-Beverly claim are the same.
28 *Troensegaard v. Silvercrest Indus., Inc.*, 175 Cal. App. 3d 218, 226-28 (1985). When

a consumer alleges both a Song-Beverly claim and a tort claim, however, she must elect to recover either a civil penalty or punitive damages to avoid "double recovery." *See id.*; *Clauson v. Superior Court*, 67 Cal. App. 4th 1253, 1256 (1998).

### 1. Restitution

Under the Song-Beverly Act, restitution is measured by the "amount equal to the actual price paid or payable [for the vehicle] by the buyer," less the reduction in value to the vehicle "directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor … for correction of the problem that gave rise to the nonconformity." Cal. Civ. Code § 1793.2(d)(2)(B)-(C). "[T]he actual price paid or payable by the buyer [only] includes any paid finance charges." *Alvarado v. FCA US, LLC*, No. 17-cv-00505-JGB (DTBx), 2017 WL 2495495, at *4 (C.D. Cal. Jun. 8, 2017) (emphasis added). Where the record does not show whether a plaintiff has made all installment payments for the amount financed, courts have found the total "cash price" listed on a Retail Installment Sale Contract is a reasonable estimate of "the actual price paid or payable" for the vehicle. *See Luna*, 2021 WL 4893567, at *7; *Messih v. Mercedes-Benz USA, LLC*, No. 21-cv-03032-WHO, 2021 WL 2588977, at *4 (N.D. Cal. June 24, 2021) (collecting cases).

To determine the restitution amount, the cash price is then reduced by a "mileage offset" to account for the vehicle's reduction in value attributable to use by the plaintiff, as required by Cal. Civ. Code § 1793.2(d)(2)(C). *See Messih*, 2021 WL 2588977, at *4. The mileage offset is determined by multiplying the "actual price of the new motor vehicle paid or payable by the buyer … by a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer delivered the vehicle" for correction of the defect. Cal. Civ. Code § 1793.2(d)(2)(C).

///

///

///

Here, Defendant submits evidence of an undisputed Retail Installment Sale Contract with a cash price of $24,035.00.[2] *See* Dkt. 5, Ex. Q ("RISC") at 1. When Plaintiff first brought the vehicle in for repair, the mileage was 20,496. Koo Decl. ¶ 6. The odometer, however, reflected 10 miles at the time of purchase. RISC at 1. Thus, Plaintiff drove the vehicle 20,486 miles before the first attempted repair, and the mileage offset is $24,035 x (20,486/120,000) = $4,103.18.[3] Subtracting $4,103.18 from $24,035.00, the court estimates Plaintiff's actual damages are $19,931.82.

Moreover, $19,931.82 is a conservative estimate of Plaintiff's damages.[4] Notably, Plaintiff alleges she is entitled to recover "the entire contract price" of the vehicle, Compl. ¶ 133, without regard to the cash price or any mileage offset. According to the evidence submitted, the sale price of the vehicle was $32,313.04. RISC at 1. At least one court within this district has found this figure controls the restitution calculation when Plaintiff seeks to recover the entire contract price. *See Gupta v. Mercedes-Benz USA, LLC*, No. 20-cv-9295-GW (JEMx), 2020 WL 7423111, at *3 (C.D. Cal. Dec. 10, 2020) (noting "[t]he Court only considers what a plaintiff's complaint puts in-controversy, not what a plaintiff is ultimately likely to recover or whether a defendant likely has a defense that will preclude some or all of that recovery.").

### 2. Civil Penalties

The Song-Beverly Act allows a plaintiff to recover a civil penalty of twice the amount of actual damages if the defendant's conduct was "willful." Cal. Civ. Code § 1794(c), (e). Here, Plaintiff alleges Defendant's "failure to comply with its

---

[2] This amount does not include the document processing fee ($80), Mopar tracking system fee ($895), sales tax ($2,313.43), electronic vehicle registration or transfer charge ($29), or optional services contract ($3,000).

[3] Plaintiff failed to file a reply brief, and thus does not contest the accuracy of the mileage offset.

[4] This figure does not include potential incidental and consequential damages.

obligations under [the Song-Beverly Act] was willful, in that Defendant and its representative were aware that they were unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of repair attempts, yet Defendant failed and refused to promptly replace the Vehicle or make restitution." Compl. ¶ 127. Thus, according to Plaintiff, she is "entitled to a civil penalty of two times Plaintiff's actual damages." *Id.*

Courts "have varying views as to whether the maximum civil penalties should be considered when deciding the amount in controversy." *Verastegui v. Ford Motor Co.*, No. 19-cv-04806-BLF, 2020 WL 598516, at *3 (N.D. Cal. Feb. 7, 2020). This court is persuaded that the maximum recoverable civil penalties should be considered for purposes of determining the amount in controversy "because that is what Plaintiff put in controversy." *Cox v. FCA US LLC*, No. 20-cv-03808-WHO, 2020 WL 5046103, at *2 (N.D. Cal. Aug. 24, 2020); *see also Saulic v. Symantec Corp.*, No. 07-cv-00610-AH (PLAx), 2007 WL 5074883, at *4 (C.D. Cal. Dec. 26, 2007) ("Courts as a matter of law, calculate the amount in controversy based upon the maximum amount of civil penalties available to plaintiff.").

Plaintiff here alleges Defendant acted willfully and that she is entitled to the maximum civil penalty. Defendant should not be required to put forth evidence of its own willfulness to oppose a motion to remand. *See Canesco*, 2021 WL 5122231, at *19 (declining to require the defendant to "prove a case against itself" with respect to liability for civil penalties in the calculation of the amount in controversy). Accordingly, the court finds that for jurisdictional purposes, the civil penalties available to Plaintiff amount to at least $19,931.82 x 2 = $39,863.64. Adding this figure to Plaintiff's actual damages, the amount in controversy, exclusive of attorneys' fees and punitive damages, is at least $59,795.46.

   3.  *Attorneys' Fees and Punitive Damages*

Plaintiff's Complaint also seeks reasonable attorneys' fees as authorized by Cal. Civ. Code § 1794(d) and punitive damages. *See* Compl., Prayer for Relief; Mot. 13

8

(noting Cal. Civ. Code § 3294(a) authorizes the recovery of punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice"). Both prospective attorneys' fees and punitive damages are properly included in the court's assessment of the amount in controversy. *See Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."); *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648-49 (9th Cir. 2016) (noting the amount in controversy includes "damages (compensatory, punitive, or otherwise) … as well as attorneys' fees awarded under fee shifting statutes"). An award of punitive damages is typically limited to a single-digit multiplier of the plaintiff's compensatory damages. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 US 408, 424-425 (2003). And as noted above, Plaintiff may recover either a civil penalty or punitive damages, but not both. *Troensegaard*, 175 Cal. App. 3d at 226-28.

Here, defense counsel submits a declaration stating he has litigated hundreds of cases under the Song-Beverly Act, and in his experience, plaintiffs' attorneys regularly request more than $75,000 in attorneys' fees for cases tried or prepared for trial. Dkt. 4 (Stuhlbarg Decl.) ¶ 5. Indeed, Plaintiff's counsel, Strategic Legal Practices, has sought over $250,000 in attorneys' fees in this district in an action brought under the Song-Beverly Act. *See Jerry Zomorodian v. BMW of North America, LLC, et al.*, Case No. 17-cv-05061-DMG (PLAx), Dkt. 136 at 7. Thus, according to defense counsel, it is more likely than not Plaintiff's counsel will seek fees in excess of $60,000 if the case goes to trial. Opp. 15.

Plaintiff, on the other hand, argues this estimate of attorneys' fees is speculative, and that defense counsel "fails to compare the facts and circumstances of *this* case to any of the cases referenced in [his] declaration, or how any of the potentially relevant cases in his declaration reflect a reasonable and accurate estimate of the attorneys' fees in *this* matter." Mot. 13-14 (emphasis in original). The court,

however, has no difficulty finding Defendant has shown it is more likely than not that Plaintiff's demand for attorneys' fees places at least $15,205 at stake, pushing the amount in controversy over the jurisdictional threshold.

Plaintiff also largely ignores the impact of her claim for punitive damages on the court's calculation of the amount in controversy, arguing "Defendant offers *no evidence* regarding 'oppression, fraud, or malice' that might support such an award of punitive damages." Mot. 13 (emphasis in original). As with Plaintiff's claim for civil penalties, the court declines to require Defendant to put forth evidence of its own wrongdoing. Plaintiff's allegation that she is entitled to punitive damages adequately places such damages at issue when calculating the amount in controversy. Furthermore, when added to the court's restitution calculation, the court need only multiply Plaintiff's actual damages by three to satisfy the amount in controversy. Multiplying Plaintiff's actual damages by nine places $179,386.38 in controversy for punitive damages alone. Accordingly, the court finds Defendant has shown by a preponderance of the evidence that the amount in controversy exceeds $75,000, and jurisdiction is proper under 28 U.S.C. § 1332. Plaintiff's Motion to Remand (Dkt. 12) is DENIED.

## CONCLUSION

For the foregoing reasons, the court DENIES Plaintiff's Motion to Remand (Dkt. 12).

IT IS SO ORDERED.

Dated: July 5, 2022

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge